IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII ANNUITY TRUST FUND FOR OPERATING ENGINEERS, BY ITS TRUSTEES, LANCE WILHELM, KATHLEEN THURSTON, MARNIE KOGA HURSTY, CHAD GOODFELLOW, LEONARD DEMPSEY, RUSSELL E. BURNS, PANE MEATOGA, JR., DAN REDING, STEVE INGERSOLL AND MICHAEL AKAU;<br><br>    Plaintiff,<br><br>    vs.<br><br>KAUAI VETERANS EXPRESS COMPANY, LTD., A HAWAII CORPORATION;<br><br>    Defendant. | CIV. NO. 16-00615 JMS-KSC<br><br><br>ORDER GRANTING PLAINTIFFS TRUSTEES OF THE HAWAII ANNUITY TRUST FUND FOR OPERATING ENGINEERS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 37, AND DENYING DEFENDANT KAUAI VETERANS EXPRESS COMPANY, LTD.'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT, ECF NOS. 39, 48 |

<u>**ORDER GRANTING PLAINTIFFS TRUSTEES OF THE HAWAII ANNUITY TRUST FUND FOR OPERATING ENGINEERS' RENEWED MOTION FOR PARTIAL SUMMARY JUDGMENT, ECF NO. 37, AND DENYING DEFENDANT KAUAI VETERANS EXPRESS COMPANY, LTD.'S MOTIONS FOR PARTIAL SUMMARY JUDGMENT, ECF NOS. 39, 48**</u>

## I. INTRODUCTION

Plaintiffs ("Trustees") are trustees of the Hawaii Annuity Trust Fund

for Operating Engineers ("the Trust"), a multiemployer employee benefit plan

established pursuant to a trust agreement incorporated in a collective bargaining agreement ("CBA") between Defendant Kauai Veterans Express Company, Ltd. ("Kauai Veterans") and the Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO ("the Union"). *See* Compl. ¶¶ 1-5, ECF No. 1. Trustees seek summary judgment on their asserted right to audit Kauai Veterans' payroll records to determine whether funds are due to the Trust. Mot. at 1, ECF No. 37. And they seek a judgment finding invalid Kauai Veterans' defense based on the Union's alleged breach of the CBA's Favored Nations clause. *Id.*

Also before the court, are Kauai Veterans' motion for partial summary judgment regarding its "Favored Nations" defense and its amended motion for partial summary judgment regarding the alleged end-date of its obligation to make payments to the Trust. ECF Nos. 39, 48. For the reasons stated below, the Trustees' motion is granted, and Kauai Veterans' motions are denied.

## II. <u>BACKGROUND</u>

Kauai Veterans and the Union entered into a CBA entitled "Kauai Trucking Agreement 2011-2014" ("the 2011 Agreement"). ECF No. 1-1. It incorporated the trust agreements applicable to the "Operating Engineers Pension/Annuity Trust" which is a multiemployer benefit plan within the meaning of the Employee Retirement Income Security Act of 1974 ("ERISA"),

29 U.S.C. §§ 1001 *et seq*. *Id*. § 14.02.00; Compl. ¶ 3. Among other things, the

CBA required Kauai Veterans to make certain regular payments to the Trust.

2011 Agreement §§ 14.02.00-14.03.02. It also required Kauai Veterans to

"provide the appropriate Trustees or their authorized representative(s) with

information and records necessary to carry out the [Trust's] purposes" and

"permit an audit of [its] payroll records . . . to ascertain whether all

contributions due have been paid." *Id*. § 14.03.02. By its terms, the 2011

Agreement was in effect until at least June 30, 2014, and it remained in effect

thereafter unless Kauai Veterans provided the Union with written notice of

termination consistent with "Section 8(d) of the National Labor Relations Act,

as amended." *Id*. § 01.01.00.

In approximately July or August 2014, Kauai Veterans and the Union

entered into another agreement ("the 2014 Agreement"), which states, "It is

understood that unless modified by this Memorandum of Agreement, the terms

and conditions of the existing collective bargaining Agreement shall be

unchanged." ECF No. 1-2 at 1. The 2014 Agreement provides that it is

effective from July 1, 2014 through at least June 30, 2019. *Id*.

Kauai Veterans underwent audits for 2014 and 2015 that were

performed by Hawaii Benefit Administrators, Inc. ("HBA"). Noelle Tagaban

Decl. ¶¶ 4-5, ECF No. 28-3. The initial auditor for those periods, who is

apparently no longer with HBA, raised no issues or concerns during his review, but the current auditor states that as a result of "further review of said audit results, our office came to the conclusion that further audit was necessary given clear discrepancies in the self-reported data provided by [Kauai Veterans]." *Id.* ¶ 6. Kauai Veterans refused to submit to further audits. Compl. ¶ 12.

On November 11, 2016, Trustees filed their complaint requesting Kauai Veterans be ordered to submit reports and payments in accordance with the CBA and Trust agreement and to permit Trustees to audit its "payroll books and records for the period of January 1, 2015 to the present," and earlier if necessary. Compl. at 9. Trustees also requested damages based on any sums due following the audit. *Id.*

On February 1, 2017, Kauai Veterans sent an email to counsel for the Union and Trustees purporting to withdraw recognition of the Union effective July 1, 2017. ECF No. 49-8 ¶ 3; ECF No. 49-10 at 1. Attached to the email was a letter addressed to Kauai Veterans' counsel Jeffrey Harris that contained the following paragraphs:

> On January 26, 2017 a meeting between Shop Steward James K. Kanei 3rd, other employee (sic) was conducted in which they decided that they no longer desired to be part of the Operating Engineers Local Union #3.
>
> They decided to withdraw their membership from the union immediately upon your approval of the proper correspondence to facilitate their request to the union so

they can stop further financial contributions to the
Operating Engineers Local Union #3.

ECF No. 49-10. at 2.  The letter included a chart listing the names and

signatures of nine employees[1]; checkmarks appeared next to each employee's

name in a column marked "Leave."  *Id.*  Below that chart, however, was the

following statement: "My initial and signature above indicates my . . .

individual desire to participate as a member of Operating Engineers Local

Union #3.  This choice was made of my own free will and desire and was not

coerced in making my decision."[2]  *Id.*

In February and August, 2017, the Union filed charges of unfair labor

practices against Kauai Veterans with the National Labor Relations Board

("NLRB"), encompassing actions bearing on the Union's alleged loss of

majority support.[3]

---

[1] There appears to be no dispute that these nine employees constituted a majority of
the applicable bargaining unit.

[2] The parties disagree about whether this apparent expression of a desire to
participate in the Union was the result of a simple typographical error.  *See* Mot. at 5; Opp'n
at 10, ECF No. 55.

[3] Trustees have asked the court to take judicial notice of the NLRB proceedings and
of documents accessible through the NLRB website.  ECF No.  54.  The "court may take
judicial notice of matters of public record," *Lee v. City of Los Angeles*, 250 F.3d 668, 689
(9th Cir. 2001) (internal quotation marks and citation omitted), and Kauai Veterans has not
opposed the Trustees' request.  Therefore, the court takes judicial notice of the NLRB
proceedings to the extent necessary for resolution of these motions.

Trustees filed their motion for partial summary judgment on August 8, 2017.  ECF No. 37.[4]  Kauai Veterans filed its motion for partial summary judgment on its Favored Nations defense the same day.  ECF No. 39.  It filed an opposition to Trustees' motion on November 7, 2017.  ECF No. 58.  And Trustees replied on November 14, 2017.[5]  ECF No. 59.

Kauai Veterans filed its motion for summary judgment regarding the end-date of its contribution obligation on August 29, 2017.  ECF No. 48. Trustees opposed the motion on November 7, 2017.  ECF No. 55.  And Kauai Veterans replied on November 14, 2017.[6]  ECF No. 61.

A hearing was held on November 28, 2017.

## III.  STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).  The burden initially lies with the moving party to show

---

[4] With leave of court, ECF No. 62, Trustees supplemented their concise statement of fact in support of the motion, ECF No. 38, on November 16, 2017.  ECF No. 65.

[5] Trustees did not file an opposition to Kauai Veterans' motion regarding its Favored Nations defense.  On November 27, 2017, Trustees filed a motion to extend the deadline for them to do so.  ECF No. 70.  Finding no excusable neglect, the court denied that motion, ECF No. 72, but it has considered the arguments in Trustees' motion regarding the Favored Nations defense, ECF No. 37, in determining the substantive issue presented.

[6] Trustees filed a motion to strike Kauai Veteran's reply and concise statement in support of the reply on November 16, 2017.  ECF No. 63.  Given this ruling on the underlying motion, the motion to strike is DENIED as moot.

that there is no genuine issue of material fact. *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). Nevertheless, "summary judgment is mandated if the non-moving party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case.'" *Broussard v. Univ. of Cal. at Berkeley*, 192 F.3d 1252, 1258 (9th Cir. 1999) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue is material if the resolution of the factual dispute affects the outcome of the claim or defense under substantive law governing the case. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 919 (9th Cir. 2001). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences on behalf of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses[.]" *Celotex*, 477 U.S. at 323-24. "There is no genuine issue of fact if the party opposing the motion 'fails to make an adequate showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear

the burden of proof at trial.'" *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.

1989) (quoting *Celotex*, 477 U.S. at 322). Moreover, there is no genuine issue

of material fact if, taking the record as a whole, a rational trier of fact could not

find in favor of the non-moving party. *Matsushita*, 475 U.S. at 586; *Taylor*,

880 F.2d at 1045.

## IV. <u>DISCUSSION</u>

**A.        Favored Nations Defense**

The parties have both moved for summary judgment regarding the

viability of Kauai Veterans' so-called "Favored Nations" defense, which is

based on the following CBA provision.

> If the Union grants to any Employer in the Trucking
> Industry on the island of Kauai any terms or conditions
> better than those of this Agreement, then such better
> terms or conditions and application shall be made
> automatically available to all other Employers in the
> Trucking Industry on the island of Kauai under this
> Agreement with the Union, and the Union shall
> immediately notify the Employers of such concessions.

§ 25.01.01. ECF No.1-1. Kauai Veterans contends that because the Union has

not enforced auditing and contribution obligations with other trucking industry

employers on Kauai, this clause "automatically entitle[s] Kauai Veterans not to

comply with the audit and contribution terms and conditions of the agreement."

Opp'n at 5, ECF No. 58. Trustees contend that "an alleged breach of a [favored

nations clause] is not a valid defense to a trust fund action to enforce

8

contributions." Reply at 7, ECF No. 59. Both parties rely principally on *Lewis v. Benedict Coal Corp.*, 361 U.S. 459 (1960), but they draw differing conclusions as to its effect on this case.

*Benedict Coal* considered whether a CBA may "be construed as making performance of union promises a condition precedent to [the employer's] promise to pay" into an employee welfare fund. 361 U.S. at 465. Reasoning that a CBA "is not a typical third-party beneficiary contract" and basing its decision largely on "national labor policy" the Court held that the CBA could not be so construed unless the parties to the CBA expressed their intention unequivocally: "parties must have expressed such an intention within the [CBA] in unequivocal words before they can be said to have agreed that the union's breaches of its promises should give rise to a defense against the duty assumed by an employer to contribute." *Id*. at 468, 470. Finding no such unequivocal language, the Supreme Court precluded the employer from raising the union's strike as a defense to the collection action. *Id.* at 468-71.

Kauai Veterans contends that the Favored Nations clause here unequivocally entitles it to better terms when those terms are given to another Kauai trucking entity. And it contends that the Union's failure to enforce audit and contribution requirements against other trucking entities constitutes the "better terms" to which it is entitled. Opp'n at 5-10.

9

But even assuming that Kauai Veterans produced evidence that the Union absolved other entities of audit and contribution responsibilities, which it has not,[7] and even assuming that the Union's alleged action or inaction could constitute the granting of more favorable terms, the language on which Kauai Veterans relies is not the unequivocal expression required by *Benedict Coal*. The Favored Nations clause does not address contributions and audits specifically, and such a clause is simply too general to qualify as an "unequivocal" expression that Kauai Veterans may stop contributing to the Trust or submitting to audits, either by operation of the clause or by the Union's breach of it. Other courts agree. *See Contractors, Laborers, Teamsters & Eng'rs Pension Plan v. G & G Trenching, Inc.*, 2009 WL 2487726, at *2-3 (D. Neb. Aug. 10, 2009) (finding breach of "most favored nations" clause did not abrogate employer's contribution obligation); *Greenes v. Vijax Fuel Corp.*, 326 F. Supp. 2d 464, 468 (S.D.N.Y. 2004) ("Under the case law of this Circuit and the language of ERISA, defendants' claimed damages offsets from the 'most favored nations' clause do not provide a defense against plaintiffs' ERISA

_____

[7] Kauai Veterans has merely pointed to the unsubstantiated statement in its Answer that "Local Union No. 3 . . . allowed Kauai trucking employers other than Defendant to violate all     . . . terms of their collective bargaining agreements" with the Union.  Answer ¶ 10, ECF No. 7.  But a party opposing a motion for summary judgment may not rest on mere denials in its pleading; it must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file' designate 'specific facts showing that there is a genuine issue for trial.'"  *Celotex*, 477 U.S. at 324.

claims."). Kauai Veterans' attempts to distinguish *G & G Trenching* and *Greenes* are unavailing. It quibbles with *G & G Trenching*'s description of the holding in *Benedict Coal*, Opp'n at 8, but that description does not indicate that the court misapplied *Benedict Coal*. And the factual differences it points out between this case and the facts of *Greenes* are not material.

Accordingly, Trustee's motion for partial summary judgment with respect to Kauai Veterans' Favored Nations defense is GRANTED, and Kauai Veterans' motion for partial summary judgment is DENIED.

## B.      Right to Audit

Trustees also seek a judgment allowing further auditing of Kauai Veterans' payroll books and records from January 1, 2015 to the present. Compl. at 9; Mot. at 2. Kauai Veterans responds variously that (1) the 2014 Agreement imposed no auditing obligations, (2) even if the 2014 Agreement gave Trustees a right to audit, it only gave them the right to a single audit either for the life of the CBA or for any particular time period, and (3) "any audit obligation . . . ended no later than July 1, 2017 (for calendar year 2016 forward) because Kauai Veterans clearly and unequivocally withdrew recognition from the Union effective July 1, 2017." Opp'n at 1-3, 10-13.

Generally, interpretation of a contract is a matter of law for the court. *Int'l Bhd. of Elec. Workers, Local 532 v. Brink Constr. Co.*, 825 F.2d 207, 214

(9th Cir. 1987).  Although collective bargaining agreements are "not always subject to . . . [t]raditional rules for contractual interpretation," such rules "may nonetheless be relevant, so long as their application is consistent with federal law 'fashioned from the policy of our national labor laws.'"  *Lalau v. Haw. Stevedores, Inc.*, 2008 WL 1968320, at *3 (D. Haw. May 6, 2008) (quoting *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 456 (1957))); *see M & G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015); *SW Adm'rs, Inc. v. Rozay's Transfer*, 791 F.2d 769, 773 (9th Cir. 1986).  Absent evidence that the parties intended otherwise, "[t]erms in a collective bargaining agreement are to be given their ordinary meaning."  *Dobbs, Inc. v. Local No. 614, Int'l Bhd of Teamsters, Chauffeurs, Warehousemen & Helpers of Am.*, 813 F.2d 85, 88 (6th Cir. 1987); *see Richardson v. Pension Plan of Bethlehem Steel Corp.*, 112 F.3d 982, 985 (9th Cir. 1997).  But "[t]he court should also interpret each provision in question as part of the integrated whole.  If possible, each provision should be construed consistently with the entire document and the relative positions and purposes of the parties."  *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. v. Yard-Man, Inc*. 716 F.2d 1476, 1479-80 (6th Cir. 1983) (internal citations omitted), *abrogated on other grounds* by *M & G Polymers USA, LLC*, 135 S. Ct. at 935.

Kauai Veterans' first contention borders on the frivolous.  It argues that the 2011 Agreement "did not exist after June 30, 2014," that "there is no evidence the 2011 Agreement is the 'existing collective bargaining agreement' referenced in the 2014 Agreement," and that therefore, "[t]here was no meeting of the minds imposing the audit or contribution obligations [Trustees] seek to enforce."  Opp'n at 2-3.  But in claiming the 2011 Agreement expired on June 30, 2014, Kauai Veterans ignores the balance of § 01.01.00 of the CBA, which states that the 2011 Agreement would remain in effect "indefinitely" unless "written notice provided by Section 8(d) of the National Labor Relations Act, as amended is . . . given by either the Union or the Employer."  ECF No. 1-1.  And there is no contention, nor evidence in the record, that such notice was given before the 2014 Agreement was executed.

Nor does Kauai Veterans attempt to explain the alleged ambiguity in the phrase "existing collective bargaining agreement."  It relies on *Orange Belt District Council of Painters No. 48 v. W.E. Stubblefield & Sons*, 437 F.2d 754 (9th Cir. 1971).  But that case is easily distinguishable.  The collective bargaining agreement there referred to work "performed pursuant to an executed current agreement," but no other agreement existed between the parties.  *Id*. at 755-56.  The union there took the position that the "executed current agreement" was an agreement between it and a trade association of

13

which the employer was not a member, and it argued that the phrase obligated the employer to become a signatory to that agreement. *Id.* Here, there was an "existing collective bargaining agreement" between the parties — the 2011 Agreement — and nothing in the record suggests the phrase could have referred to any unrelated agreements. *See Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989) ("A contract is ambiguous if reasonable people could find its terms susceptible to more than one interpretation."). There is no ambiguity.

Next, Kauai Veterans contends that it cannot be required to submit to more than one audit "for the lifespan of the CBA" or at least for any given period of time; therefore, it contends, Trustees' request to re-audit records from 2014-2015 should be denied. Opp'n at 10. Kauai Veterans bases its argument on the fact that the CBA refers to "an audit" in the singular. But interpreting this language to mean one and only one audit — either for the lifetime of the CBA or even for a shorter specific time period — would be inconsistent with the purposes of the agreement and would ignore the practicality that information giving rise to the need for an audit might not come to light all at once. *See N.L.R.B. v. Universal Servs., Inc. & Assocs.*, 467 F.2d 579, 584 n. 6 (9th Cir. 1972) ("In governing the interpretation and enforcement of collective bargaining agreements 'special heed should be given to the context in which

collective bargaining agreements are negotiated and the purpose which they are intended to serve.'" (quoting *United Steelworkers v. Am. Mfg. Co.*, 363 U.S. 564, 567 (1960))).

Moreover, the trust agreement, which is incorporated in the CBA, provides without limitation that Trustees may require an employer "to submit to it any information, data, report or documents reasonably relevant to and suitable for the purposes of [Trust] administration," and it grants the "absolute right" after written notice for an accountant selected by Trustees to enter an employer's premises and "examine and copy such books, records, papers or reports of such Employer *as may be necessary* to determine whether such Employer is making full and prompt payment of all sums required to be paid by him or it to the Fund." ECF No. 38-6 at 9-10 (emphasis added). Given this language, Trustees are not prohibited from conducting multiple audits. *See Trs. of the Sheet Metal Workers' Nat. Pension Fund v. Steel & Duct Fabrication, Inc.*, 124 F. Supp. 3d 187, 199 (E.D.N.Y. 2015) (finding use of the word "audit" in the singular did not limit trustees to a single audit during the lifetime of the CBA or to a single audit for specified time periods).

Finally, Kauai Veterans contends that its alleged withdrawal of Union recognition as of July 1, 2017, somehow absolved it of any obligation to submit to audits "for the calendar year 2016 and forward." Opp'n at 13. It gives no

explanation for this purported retroactive cancellation of obligations.  *Id*. at 13-15.  Moreover, its argument depends on its contention that the CBA ceased to exist when it gave notice of loss of majority support for the Union.  *Id*. at 14.  As explained below, that contention is incorrect.

Accordingly, summary judgment is GRANTED in favor of Trustees on its audit request.

**C.      Contribution End Date**

Kauai Veterans contends that its obligation to contribute to the Trust ended on July 1, 2017, "when it withdrew recognition from the Union."  Mot. at 2; ECF No. 48.  In response, Trustees contend that an alleged loss of majority status is an invalid defense to this action, that whether the Union has lost majority status is a question of fact within the primary jurisdiction of the NLRB, and that the Trust agreement nonetheless requires continued contributions.  Opp'n at 1, 5, 8, 12; ECF No. 55.

Section 515 of ERISA states that employers who are "obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a [CBA] shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement."  29 U.S.C. § 1145.  The Ninth Circuit has "recognized that section 515 limit[s] the availability of contract defenses in collection actions

brought on behalf of ERISA benefit plans." *MacKillop v. Lowe's Market, Inc.*, 58 F.3d 1441, 1145-46 (9th Cir. 1995) (citing *SW Adm'rs., Inc.*, 791 F.2d at 773)). And it joined the Second, Third, Seventh, and Eighth Circuits in holding that "an employer's assertion that the CBA is invalid due to lack of majority status is not a defense in an action brought by an ERISA plan or its trustees to collect employer contributions. Indeed, [it] conclude[d] that Congress intended to abolish this very defense with the passage of section 515." *Id.* at 1444.

In explaining this holding, and addressing the question of "when a binding collective bargaining agreement ceases to exist," it reconciled its decision in *MacKillop* with three earlier cases: *Sheet Metal Workers' International Association, Local 206 of Sheet Metal Workers' International Association, AFL-CIO v. West Coast Sheet Metal Co.*, 954 F.2d 1506, 1509 (9th Cir. 1992); *Laborers Health & Welfare Trust Fund, v. Westlake Development*, 53 F.3d 979 (9th Cir. 1995); and *Carpenters Health and Welfare Trust Fund for California. v. Bla-Delco Construction, Inc.*, 8 F.3d 1365, 1369 (9th Cir. 1993):

> *Sheet Metal Workers'* holds that the voluntary decertification of a union by its employees ends the collective bargaining agreement, and employer obligations to the ERISA plans cease upon that event. *Westlake* holds that, in the unique circumstances of a section 8(f) pre-hire collective bargaining agreement, an employer's unilateral repudiation of such agreement under the one-employee unit rule renders the agreement

17

void, and the obligation to the ERISA benefit plan also
ceases upon repudiation. As a general proposition,
however, unilateral action of an employer will not render
a CBA void and unenforceable, nor will the mere
assertion by the employer that the union lacks majority
status. *Sheet Metal Workers'*, for example, distinguished
an employer's after-the-fact attempt to extricate itself
through unilateral action from trust fund obligations that
it knowingly accepted, and noted that at the time the
1986 CBA was imposed, the employer had no way of
being certain that the union would lose its majority
status. Where there are grievance and arbitration
procedures under the CBA, as in *Bla-Delco*, the
obligation to make contributions to the ERISA plans
continues until those procedures are followed and the
CBA is ruled to be terminated by the appropriate
authority. Similarly, in our case, where an NLRB action
had been initiated to determine whether the CBA was
invalid for lack of majority status, the employer's
obligations to the Plans continued until the NLRB ruled
that the CBA had no force and effect.

*MacKillop*, 58 F.3d at 1446 (internal quotation marks, brackets, and citations

omitted). And it affirmed the district court's ruling granting summary

judgment for unpaid contributions to the trustees of the relevant plans up until

the date of the administrative law judge's decision in the NLRB proceeding.

*Id.* at 1443.

At least one other district court has found "crucial" *MacKillop*'s

determination that the employer's contribution obligations continued until the

NLRB determination. *Cal. Serv. Emps. Heath & Welfare Tr. Fund v.*

*Command Sec. Corp.*, 2012 WL 2838863, at *7 (N.D. Cal. July 10, 2012). The

court concluded that, based on *MacKillop*, "where there are ongoing disputes as to the CBA's validity, the employer's obligations to the Trust Funds continue unabated until the issue is adjudicated." *Id*. This court agrees. Here, NLRB proceedings regarding the validity of the CBA are ongoing, *see* Gening Liao Decl., ECF No. 56-1; ECF Nos. 56-5 through 8, 73-74. Indeed, those proceedings include some of the very issues before the court on these motions. *See* ECF No. 56-1 through 8.

In its motion, Kauai Veterans relies on *Westlake* for its contention that its contribution obligation ended when it withdrew Union recognition. Mot. at 2-3. But the circumstances of this case are not the "unique circumstances" of a pre-hire CBA covering a single-employee bargaining unit. S*ee Westlak*e, 53 F.3d at 984.

Kauai Veterans also contends that under *Pace v. Honolulu Disposal Service, Inc.*, 227 F.3d 1150 (9th Cir. 2000), this court, rather than the NLRB, is the "appropriate authority" to determine whether the union had in fact lost majority support. Reply at 9, ECF No. 61. *Pace*, however, is inapposite.

In *Pace*, employees brought an action to recover wages and benefits that they claimed they were entitled to "under a series of written CBAs from 1979-1996." 227 F.3d at 1153. The defendants, which included the employer, the union, and the relevant trust funds, claimed that the CBAs did not cover the

employees because the employer and the union had "orally agreed to limit the scope of the bargaining unit to a couple of employees not including [the plaintiffs]." *Id*. The defendants contended that the employees' claims "raise[d] representational issues that must be decided in the first instance by the NLRB under the doctrine of primary jurisdiction." *Id*. at 1155-56.

The Ninth Circuit disagreed. It noted that Section 301 of the Labor Management Relations Act, 29 U.S.C. § 1985(a), is "an exception to the primary jurisdiction doctrine . . . designed to afford the courts jurisdiction to resolve labor disputes that focus[] on the interpretation of the terms of the collective bargaining agreement." *Id*. at 1156 (internal quotation marks and citations omitted). It acknowledged, however, that "[a]lthough § 301 confers concurrent jurisdiction upon the NLRB and federal courts, . . . district courts must tread lightly in areas of the NLRB's primary jurisdiction, and must continue to defer when, on close examination, section 301 cases fall within the NLRB's primary jurisdiction." *Id*. (internal quotation marks and citation omitted). And it repeated its warning that "end run[s ] around Section 9 of the National Labor Relations Act . . . under the guise of contract interpretation . . . cannot be countenanced." *Id*. (quoting *Local No. 3-193 Int'l Woodworkers of Am. v. Ketchikan Pulp Co.*, 611 F. 2d 1295, 1299-1300 (9th Cir. 1980) (alterations in *Pace*)).

*Pace* found that the issue in that case was "primarily contractual" — turning "on a question of contract interpretation" and "whether the proffered oral agreement trump[ed] the written contract." *Id*. at 1157. In explaining its reasoning, the court also stated, "In addition, the doctrine of primary jurisdiction does not apply in determining a union's past representational status." *Id*. at 1157 (internal quotation marks and citation omitted).

Kauai Veterans seizes on this language and the outcome in *Pace*, arguing that the issues here involve past representational status and that that they are "primarily contractual." Reply at 10-11. But its first argument is circular, depending on the very finding it asks this court to make — that the CBA "ceased to exist" on July 1, 2017. Its second argument conflates the question of whether the Union lacked majority support with the issues of contractual interpretation the court has already addressed above. Whether the Union enjoys majority support does not depend on the interpretation of any terms in the CBA or the Trust agreements. And the fact that this court has "concurrent" jurisdiction with the NLRB does not divest the NLRB of its jurisdiction over representational issues. *Pace*, 227 F.3d at 1156-57.

"It would contravene the policy to simplify and expedite trust fund collection actions" to require trust funds to litigate termination disputes between unions and employers. *MacKillop*, 58 F.3d at 1445. Indeed, here the

21

Union is not even a party. *MacKillop* is controlling, and it prevents a finding at this time that Kauai Veterans' contribution obligations ended on July 1, 2017. Accordingly, the court DENIES the motion for summary judgment.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Trustees' motion for partial summary judgment, ECF No. 37, is GRANTED, and Kauai Veterans is ORDERED to submit to Trustees' audit request. Kauai Veterans' motions for partial summary judgment, ECF Nos. 39 and 48, are DENIED.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, December 1, 2017.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Haw. Annuity Tr. Fund for Operating Eng'rs, v. Kauai Veterans Express Co.*, Civ. No. 16-00615; Order Granting Plaintiffs Trustees of the Hawaii Annuity Trust Fund for Operating Engineers' Renewed Motion for Partial Summary Judgment, ECF No. 37, and Denying Defendant Kauai Veterans Express Company, Ltd.'s Motions for Partial Summary Judgment, ECF Nos. 39, 48

22