IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| HAWAII ANNUITY TRUST FUND FOR OPERATING ENGINEERS, BY ITS TRUSTEES; LANCE WILHELM; KATHLEEN THURSTON; MARNIE KOGA HURSTY; CHAD GOODFELLOW; LEONARD DEMPSEY; RUSSELL E. BURNS; PANE MEATOGA, JR.; DAN REDING; STEVE INGERSOLL; AND MICHAEL AKAU,<br><br>        Plaintiff,<br><br>        vs.<br><br>KAUAI VETERANS EXPRESS COMPANY, LTD., a Hawaii corporation,<br><br>        Defendant. | Civ. No. 16-00615 JMS-RT<br><br>ORDER GRANTING PLAINTIFFS TRUSTEES OF THE HAWAII ANNUITY TRUST FUND FOR OPERATING ENGINEERS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 87 |

## ORDER GRANTING PLAINTIFFS TRUSTEES OF THE HAWAII ANNUITY TRUST FUND FOR OPERATING ENGINEERS' MOTION FOR SUMMARY JUDGMENT, ECF NO. 87

## I. INTRODUCTION

Plaintiffs ("Trustees") are trustees of the Hawaii Annuity Trust Fund for Operating Engineers ("the Trust"), a multiemployer employee benefit plan within the meaning of the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, et seq., that was established pursuant to a trust agreement incorporated in a collective bargaining agreement ("CBA") between

Defendant Kauai Veterans Express Company, Ltd. ("Kauai Veterans") and the Operating Engineers Local Union No. 3 of the International Union of Operating Engineers, AFL-CIO ("the Union"). *See* Compl. ¶¶ 1-5, ECF No. 1. Trustees seek summary judgment on their asserted right to enforce the CBA and an order requiring Kauai Veterans to (1) pay delinquent contributions, liquidated damages, and interest in the amounts determined by audit of Kauai Veterans' payroll records and (2) submit reports and monetary contributions for the period starting July 1, 2017 until the CBA expires or is legally terminated. *See* Mot. at 2, ECF No. 87; Reply at 2, ECF No. 95. Trustees also seek audit fees, attorneys' fees, and costs incurred in this action, as well as partial judgment pursuant to Federal Rule of Civil Procedure 54. Mot. at 2.

For the reasons stated below, Trustees' Motion is GRANTED.

## II. <u>BACKGROUND</u>

On December 1, 2017, this court issued a comprehensive order that granted Trustees' motion for partial summary judgment and denied Kauai Veterans' motions for partial summary judgment (the "December 1 Order"). ECF No. 78; *Haw. Annuity Tr. Fund for Operating Eng'rs v. Kauai Veterans Express Co.*, 2017 WL 5972691 (D. Haw. Dec. 1, 2017). More specifically, the December 1 Order (1) set forth a detailed factual background, (2) granted Trustees' request for further audit of Kauai Veterans' payroll records, (3) determined that pursuant to

*MacKillop v. Lowe's Market, Inc.*, 58 F.3d 1441 (9th Cir. 1995), Kauai Veterans'

contribution obligations continue until adjudication of pending NLRB proceedings

regarding the validity of the CBA, and thus (4) denied summary judgment to Kauai

Veterans as to its contention that based on its withdrawal of Union recognition, its

contribution obligations ended on July 1, 2017.[1]  *Kauai Veterans*, 2017 WL

5972691, at *1-3, 6-8.  The court presumes a detailed familiarity with the

December 1 Order and therefore, sets forth only those facts necessary to address

the instant Motion.

Kauai Veterans and the Union entered into a CBA entitled "Kauai

Trucking Agreement 2011-2014" ("the 2011 Agreement").  ECF No. 1-1.  With

exceptions not relevant here, the 2011 Agreement covers all Kauai Veterans

employees "performing work under the classifications set forth in Exhibit 'A'

(Wage and Classification Schedule) attached hereto . . . ."  *Id.* § 02.01.00, Ex. A.

The classifications listed in Exhibit A include:

- 8011  Tractor Trailer (Hauling Equipment)
- 8461  Truck Driver (Slip-in or Pup)
- 8431  Truck Driver (Semi-Trailer, Rock Cans, Semi-Dump Or Roll-Offs)
- 7732  Tandem Dump Truck
- 8433  Freight Truck Driver
- 4645  Mechanic

---

[1] The December 1 Order also granted Trustees' motion for summary judgment and denied Kauai Veterans' motion for summary judgment as to Kauai Veterans' most favored nations defense.  *Kauai Veterans*, 2017 WL 5972691, at *4.

*Id.*, Ex. A.  The 2011 Agreement requires that the "Employer . . . permit an audit of the Employer's payroll records . . . to ascertain whether all contributions due have been paid."  *Id.* § 14.03.02.

The 2011 Agreement also provides it "shall not be modified except by written document signed by the parties," *id.* § 21.00.00, and that it "contains the entire agreement of the parties and neither party has made representations to the other which are not contained herein," *id.* § 22.01.00.  The 2011 Agreement lasted through at least June 30, 2014, but it remained in effect thereafter unless Kauai Veterans provided the Union with written notice of termination consistent with "Section 8(d) of the National Labor Relations Act, as amended."  *Id*. § 01.01.00.

In July or August 2014, Kauai Veterans and the Union entered into another agreement ("the 2014 Agreement"), which states: "It is understood that unless modified by this Memorandum of Agreement, the terms and conditions of the existing collective bargaining Agreement shall be unchanged."  ECF No. 1-2 at 1.  The 2014 Agreement states that it is effective from July 1, 2014 through June 30, 2019, and will remain in effect thereafter unless Kauai Veterans provides the Union with written notice of termination consistent with "Section 8(d) of the National Labor Relations Act, as amended."  *Id*. § 01.01.00.  The 2014 Agreement also provides, in part:

Exhibit "A"

## WAGE AND CLASSIFICATION SCHEDULE

Excluding projects on which Davis-Bacon and
GCLA/BILA wage and fringe benefit rates must be paid,
wage and fringe benefit rates as set forth in Exhibit "A"
Wage and Classification Schedule, shall apply to all Off-
Site work performed by the Employer.

Effective Dates

Wage increase:

| 2014* | 2015* | 2016* | 2017* | 2018* |
|-------|-------|-------|-------|-------|
| +$0.50 | +$0.60 | +$0.70 | +$0.80 | +$0.90 |

*The Union shall allocate increases to wages and/or fringe
benefits

*Id.* at 1; Def.'s Ex. C at 4, ECF No. 94-6. On July 2, 2014, the 2014 Agreement

modifying the CBA was ratified by the Union membership.[2] *See* Meatoga Decl.

¶ 4, ECF No. 96-2; Pls.' Ex. A, ECF No. 96-4; Def.'s Ex. C at 1.

On August 19, 2014, Sharon Costello, Director of Contracts for the

Union, wrote a letter to Kauai Veterans advising, in pertinent part, that:

Pursuant to the current Agreement with the [Union] and
[Kauai Veterans], . . . effective July 1, 2014, the existing
wages shall be increased as indicated below:

| Wages | 7-1-13 | Increase | 7-1-14 |
|-------|--------|----------|--------|
| 4645-Mechanic | $24.90 | $.50 | $25.40 |

---

[2] Together, the 2011 and 2014 Agreements comprise the current operative CBA. For
purposes of this Order and unless otherwise indicated, references to the "CBA" are to the 2011
and 2014 Agreements.

. . .

| 8433-Truck Driver | 19.09 | .50 | 19.59 |

. . .

All other terms and conditions of the existing Agreement
shall remain unchanged. . . .

Def.'s Ex. D, ECF No. 94-7.

During a meeting held sometime in 2014 or 2015, Union

Representative Ana Tuiasosopo allegedly told Stanley Morinaka, Sr., President of

Kauai Veterans, that "he may 'leave out' the 'freight boys' from the Trust Fund

contributions." Morinaka Decl. ¶ 4, ECF No. 94-2. On January 22, 2015, Pane

Meatoga, the Union's District Representative, sent an email to Susan Taniguchi,

Kauai Veterans' Office Manager, stating that after the 2014 Agreement was

ratified, Kauai Veterans raised an issue regarding "wages for freight." Def.'s Ex.

C at 1. The email further stated that in response, Meatoga had "explained that

freight from the pier or warehouses were in the jurisdiction of the Teamsters

Union. As such we will not acknowledge that work in our contracts." *Id.* at 2;

Meatoga Decl. ¶ 3. Based on the August 19, 2014 letter, the January 22, 2015

email, and information discussed during the meeting with Tuiasosopo, Morinaka

instructed his employees not to make contributions to the Trust for "Freight Truck

Drivers." Morinaka Decl. ¶ 5.

On February 1, 2017, Kauai Veterans purportedly withdrew

recognition from the Union, effective July 1, 2017, based on an alleged lack of

majority support.  Def.'s Concise Statement of Facts ("CSF") ¶ 1, ECF No. 94; *see also* Def.'s Amended CSF ¶¶ 13-14, ECF No. 49 (filed in support of a prior motion for partial summary judgment).  In response, the Union filed charges of unfair labor practices against Kauai Veterans with the National Labor Relations Board ("NLRB").[3]

The parties agree that Kauai Veterans' reports and contribution payments to the Trust for May and June 2017 were late and that Kauai Veterans did not submit reports and contributions from July 2017 to July 2018.  Pls.' CSF ¶ 6, ECF No. 88; Def.'s CSF at 2, ECF No. 94.  Kauai Veterans underwent audits for 2014 through June 2017 that were performed by Hawaii Benefit Administrators, Inc. ("HBAI") Payroll Auditor Noelle Tagaban.  *See* Tagaban Decl. ¶¶ 1, 7-10, ECF No. 88-3; Ilacqua Decl. ¶ 13, ECF No. 88-2.  Based on these audits, Trustees determined that from January 2014 through June 2017, Kauai

---

[3] On April 27, 2018, an NLRB Administrative Law Judge ("ALJ") issued his Decision in favor of the Union and ordered Kauai Veterans to resume its reporting and contribution obligations under the CBA (the "April 27 Decision").  *See* Pls.' CSF ¶ 5; Pls.' Ex. A, ECF No. 88-8.  Kauai Veterans filed its Exception to the Decision, which remains pending before the NLRB.  *See* Pls.' CSF ¶5.

The December 1 Order took judicial notice of the NLRB proceedings and of documents accessible through the NLRB website.  *See Kauai Veterans*, 2017 WL 5972691, at *2 n.3.  Trustees again ask the court to take judicial notice of these proceedings, particularly the April 27 Decision.  ECF No. 89.  The "court may take judicial notice of matters of public record," *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (internal quotation marks and citation omitted), and Kauai Veterans has not opposed the Trustees' request.  Therefore, the court takes judicial notice of the NLRB proceedings, documents, and April 27 Decision to the extent necessary to resolve the instant motion.

Veterans under-reported and failed to make contributions for certain "misclassified" employees who performed truck driver or mechanic duties. *See* Pls.' CSF ¶¶ 9-14; Tagaban Decl. ¶¶ 9-19; Second Tagaban Decl. ¶ 5, ECF No. 96-3; Pls.' Exs. F, H to K, ECF Nos. 88-13, 88-15 to 88-18. Trustees further determined that Kauai Veterans owes the following amounts: (1) liquidated damages and interest of $1,003.50 and $5.88, respectively, for the late May and June 2017 contributions; (2) unpaid contributions of $65,088.13 and liquidated damages of $13,017.72 for those unpaid contributions; and (3) $22,358.03 in interest as of September 30, 2018 (at $21.40 per diem), for a total amount due of $101,473.67, plus additional interest, audit fees, attorneys' fees and costs. *See* Pls.' CSF ¶¶ 6-7, 9, 16; Ilacqua Decl. ¶¶ 11-13; Tagaban Decl. ¶¶ 12; Pls.' Exs. B to D, G to H, ECF Nos. 88-9 to 88-11, 88-14 to 88-15.

According to Kauai Veterans, the employees allegedly misclassified were in fact freight truck drivers, mechanic helpers, or the son of Kauai Veterans' president, and therefore, not covered under the CBA. *See* Def.'s CSF at 3; *id.* ¶¶ 4-17, 27; Morinaka Decl. ¶ 6; Taniguchi Decl. ¶¶ 2-15, ECF No. 94-3.

Trustees filed their motion for summary judgment on October 10, 2018. ECF No. 87. Kauai Veterans filed its opposition on December 10, 2018. ECF No. 93. And Trustees filed their reply on December 17, 2018. ECF No. 95. A hearing was held on January 7, 2019.

# III. STANDARD OF REVIEW

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). "A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion and of identifying those portions of the pleadings and discovery responses that demonstrate the absence of a genuine issue of material fact." *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007) (citing *Celotex*, 477 U.S. at 323); *see also Jespersen v. Harrah's Operating Co.*, 392 F.3d 1076, 1079 (9th Cir. 2004). "When the moving party has carried its burden under Rule 56[(a)] its opponent must do more than simply show that there is some metaphysical doubt as to the material facts [and] come forward with specific facts showing that there is a *genuine issue for trial*." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citation and internal quotation marks omitted).

"An issue is 'genuine' only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is 'material' only if it could affect the outcome of the suit under the governing law." *In re Barboza*, 545 F.3d 702, 707 (9th Cir. 2008) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). When considering the evidence on a motion for summary judgment, the court must draw all reasonable inferences in the

light most favorable to the nonmoving party. *Friedman v. Live Nation Merch., Inc.*, 833 F.3d 1180, 1184 (9th Cir. 2016).

"When the party moving for summary judgment would bear the burden of proof at trial, 'it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *C.A.R. Transp. Brokerage Co., Inc. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)). In this instance, then, Trustees "must establish beyond peradventure *all* of the essential elements of the claim . . . to warrant judgment in [their] favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

## IV. <u>DISCUSSION</u>

Kauai Veterans opposes the instant motion contending that the allegedly misclassified employees for whom Trustees claim Kauai Veterans should have made Trust contributions were not covered under the CBA. More specifically, Kauai Veterans argues that (1) the 2014 Agreement modified the CBA to exclude freight truck drivers, (2) the CBA never covered mechanic helpers, and (3) because Stanley Morinaka, Jr. is the son of Kauai Veterans' president, he is not a covered employee. *See* Def.'s Opp'n at 6-7; Def.'s CSF at 3; *id.* ¶¶ 4-17; Taniguchi Decl. ¶¶ 2-15. Kauai Veterans further argues that even if it owes contributions for these employees, it should not be ordered to make such payments

now because it would not likely be reimbursed should the NLRB or Federal Court of Appeals determine that the CBA terminated on June 30, 2017. The court addresses these arguments in turn.

## A.     Interpretation of the CBA

### 1.     Legal Standard

The construction of a CBA is a question of law for the court. *Santa Monica Culinary Welfare Fund v. Miramar Hotel Corp.*, 920 F.2d 1491, 1493 (9th Cir. 1990). Courts interpret CBAs in accordance with "ordinary principles of contract law" to the extent "those principles are not inconsistent with federal labor policy." *Am. Fed'n of Musicians of U.S. & Canada v. Paramount Pictures Corp.*, 903 F.3d 968, 977 (9th Cir. 2018) (quoting *M&G Polymers USA, LLC v. Tackett*, 135 S. Ct. 926, 933 (2015)) (other citation omitted). And when interpreting a CBA, "as with any other contract, the parties' intentions control." *Tackett*, 135 S. Ct. at 933 (quotation omitted).

In this endeavor, a CBA's written terms are to be "given their ordinary meaning," and read in the context of the entire agreement. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000) (citations omitted). There is a presumption that "every provision was intended to accomplish some purpose, and that none are . . . superfluous." *Chaly-Garcia v.*

*United States*, 508 F.3d 1201, 1204 (9th Cir. 2007) (quoting *Harris v. Epoch Grp., L.C.*, 357 F.3d 822, 825 (8th Cir. 2004)).

Where a CBA's written terms are "clear and unambiguous, its meaning is to be ascertained in accordance with its plainly expressed intent." *Am. Fed'n of Musicians of U.S. & Canada*, 903 F.3d at 977 (quoting *Tackett*, 135 S. Ct. at 933). But where a CBA's written terms are ambiguous, the court may consider extrinsic evidence "to determine the parties' intentions." *Id.* (citing *Ariz. Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Tr. Fund v. Conquer Cartage Co.*, 753 F.2d 1512, 1517-18 (9th Cir. 1985) (other citation omitted)). Such evidence may include, but is not limited to, the parties' conduct after execution of the CBA. *See Pierce Cty. Hotel Emps. & Restaurant Emps. Health Tr. v. Elks Lodge*, 827 F.2d 1324, 1327 (9th Cir. 1987); *see also Ariz. Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Tr. Fund*, 753 F.2d at 1519 ("In resolving the question of the parties' intent, district courts give great weight to the parties' conduct subsequent to contract formation." (citation and quotation marks omitted)).

A contract is not ambiguous simply because the parties dispute its meaning; rather, a contract "is only ambiguous if reasonable people could find its terms susceptible to more than one interpretation." *Patterson*, 204 F.3d at 1210 (citation omitted); *see Trs. of S. Cal. IBEW-NECA Pension Tr. Fund v. Flores*, 519

F.3d 1045, 1047 (9th Cir. 2008) ("Written terms are ambiguous only if multiple reasonable interpretations exist.") (citation omitted).  Where a contract is ambiguous and contrary reasonable inferences as to the parties' intent are possible, an issue of material fact exists that generally precludes summary judgment.  *Ariz. Laborers, Teamsters & Cement Masons Local 395 Health & Welfare Tr. Fund*, 753 F.2d at 1518 (citations omitted).  However, "contrary inferences are not possible where undisputed and conclusive evidence as to the intent of the parties is before the court," and in those instances, "summary judgment would be appropriate."  *Id.* n.9

### 2.      *Freight Truck Drivers*

The parties dispute whether an alleged agreement[4] between the Union and Kauai Veterans operated to modify the CBA to exclude freight truck drivers as covered employees.

The 2011 Agreement covers "all Employees . . . performing work under the classifications set forth in Exhibit 'A' . . . attached hereto."  2011 Agreement § 02.01.00.  Exhibit A specifically includes "freight truck driver[s]."  The 2011 Agreement further provides that it "shall not be modified except by written document signed by parties hereto," *id.* § 21.01.00, and that it "contains the

---

[4] For purposes of this analysis, the court assumes (without determining) that such an agreement exists.

entire agreement of the parties and neither party has made representations to the other which are not contained herein," *id.* § 22.01.00. The 2014 Agreement provides that "unless modified by this Memorandum of Agreement, the terms and conditions of the existing collective bargaining agreement shall be unchanged." 2014 Agreement at 1. The December 1 Order determined that "the existing collective bargaining agreement," to which the 2014 Agreement refers, is the 2011 Agreement. *See Kauai Veterans*, 2017 WL 5972691, at *5. There is no dispute that the 2014 Agreement did not modify §§ 21.01.00 and 22.01.00 and therefore those provisions remain unchanged and fully effective.

Kauai Veterans contends that written evidence of an agreement with the Union that freight truck drivers were excluded from coverage was part of the 2014 Agreement and therefore operated to modify the CBA. The court disagrees.

The "parol evidence rule . . . bar[s] extrinsic evidence of an agreement inconsistent with an unambiguous writing." *Pace v. Honolulu Disposal Serv., Inc.*, 227 F.3d 1150, 1157-58 (9th Cir. 2000) (citing *Elks Lodge*, 827 F.2d at 1327). In *Pace*, the Ninth Circuit determined that the CBAs at issue "unambiguous[ly] . . . cover[ed] . . . all regular full time employees of the Contractor employed . . . in the classifications set forth in . . . Exhibit A," and "the proffered oral agreement . . . to restrict the bargaining unit to a handful of drivers is unquestionably inconsistent with . . . the CBAs." *Id.* at 1159. In addition, the CBAs included (1) a clause

prohibiting oral modification — "This Agreement shall not be amended, modified, changed, altered or waived except by written document executed by mutual agreement between the parties" — and (2) an integration clause — "This document contains the entire Agreement of the parties and neither party has made any representations to the other which are not contained herein." *Id.* at 1153-54. Explaining that the oral agreement "direct[ly] contradict[ed] . . . a crucial term of coverage" set forth unambiguously in the CBAs and there were "provisions in the CBAs that specifically disavow supplemental oral agreements," the Ninth Circuit held that the parol evidence rule barred consideration of the oral agreement. *Id.* at 1159.

Similarly, *Elks Lodge* affirmed the exclusion of extrinsic evidence — an employer's oral side agreements with a union confirmed by a written letter exempting temporary workers from trust fund contributions — to defend an action by the trust fund for unpaid contributions pursuant to a series of CBAs. 827 F.2d at 1327 (explaining that because the CBAs "unambiguously require contributions for temporary employees, the [district] court correctly disregarded extrinsic evidence of the parties' intent").

Kauai Veterans concedes that an oral agreement alone may not be sufficient to modify the CBA. *See* Opp'n. at 6 (citing *Kemmis v. McGoldrick*, 706 F.2d 993, 997 (9th Cir. 1983) (oral agreement between union representative and

employer did not change employer's duty to pay funds under the CBA)).  But its argument that written evidence of an oral agreement — particularly emails — is sufficient to amend the terms of a contract, *see id.* at 6-7, is unavailing.

First, none of the cases Kauai Veterans relies on for this argument involve modification of a CBA.  Second, the CBA unambiguously covers "the classifications set forth in Exhibit 'A' . . . attached [to the 2011 Agreement]," which expressly includes "8433 Freight Truck Driver[s]."  2011 Agreement § 02.01.00, Ex. A.  Third, the CBA unambiguously precludes modification of its terms unless such modification is set forth in the 2014 Agreement itself or in a written document signed by Kauai Veterans and the Union.  *See* 2014 Agreement at 1; 2011 Agreement § 21.01.00.  Fourth, none of the documents Kauai Veterans relies on to support its modification argument — the August 19 letter, January 22 email, or Morinaka's handwritten note — are signed by both parties.  Fifth, the 2014 Agreement itself neither identifies nor defines the specific classifications set forth in Exhibit A to the 2011 Agreement.  And sixth, the CBA unambiguously provides that it "contains the entire agreement of the parties and neither party has made representations to the other which are not contained herein."  2011 Agreement § 22.01.00.

The 2014 Agreement itself does not modify the classifications set forth in Exhibit A to the 2011 Agreement.  And the parol evidence rule bars

consideration of the separate alleged agreement between Kauai Veterans and the Union that contributions need not be made for freight truck drivers. *See Pace*, 227 F.3d at 1159; *Elks Lodge*, 827 F.2d at 1326-27.   In short, the CBA was not modified to exclude freight truck drivers.

Kauai Veterans admits that the following employees worked as freight truck drivers during the period January 2014 through June 2017: Loreto Bagaoisan, Jr., Pedryn Baniaga, James A. Berardi, Alan W. Jeffries, John Kahokuloa, Tom Kanahele, Ross Kaui, Wesley Ladera, Bernard Rita, Jr., Alfred Rapacon, and Tyson J. Silva.  Def.'s CSF ¶¶ 4-6, 9-12, 14-17; Taniguchi Decl. ¶¶ 2-4, 7-10, 12-15, ECF No. 94-3.  Moreover, based on the audit, HBAI determined that each of these employees performed covered truck driver work.  *See* Tagaban Decl. ¶¶ 15-17; Exs. F, H, ECF Nos. 88-13, 88-15.  Because these employees performed work covered under the CBA, Kauai Veterans is obligated to make Trust Fund contributions for the hours these employees worked.

### 3.    *Mechanic Helpers*

The court next addresses whether the CBA covers employees classified by Kauai Veterans as shop or mechanic helpers.

#### a.    *The CBA covers employees who performed mechanic duties*

By its terms, the CBA provides that it covers "all Employees employed by Employer *performing work under the classifications* set forth in

Exhibit 'A,'" which includes "mechanic" and drivers of the following types of

trucks: (1) tractor trailer; (2) slip-in or pup; (3) semi-trailer, rock cans, semi-dump,

or roll-off; (4) tandem dump; and (5) freight. 2011 Agreement § 02.01.00

(emphasis added); *id.* Ex. A. And the CBA expressly excludes employees with the

following specific job titles or classifications: "heavy equipment operators,

professional employees, guards and watchmen, office clerical employees and

supervisory employees as defined by the Labor-Management Relations Act of

1947, as amended." *Id*. § 02.01.00.

       The CBA does not define the phrase "performing work under

[specified] classifications" to clarify whether employees are covered: (1) whenever

they perform the tasks or duties that would fall under a specified classification; or

(2) only when Kauai Veterans designates them in a specified job classification.

Nevertheless, when considering other provisions of the CBA, it is clear that the

parties intended the CBA to cover all employees who perform the tasks or duties

that would fall under the specified classifications.

       First, based on the ordinary meaning of the CBA's written terms,

"performing work under" means actual work done, and does not refer to some

arbitrary, ad hoc classification. *See Patterson*, 204 F.3d at 1210 (explaining that a

CBA's written terms are to be "given their ordinary meaning").

Second, interpreting the CBA as covering only employees based on specified classifications regardless of the tasks or duties actually performed would render the words "performing work under" superfluous. And such an interpretation is contrary to basic contract interpretation principles. *See, e.g.*, *Frommert v. Conkright*, 738 F.3d 522, 529-30 (2d Cir. 2013) (recognizing that interpretation of ERISA plan under federal contract law should not "render some provisions of the plan superfluous); *Chaly-Garcia*, 508 F.3d at 1204 ("Under federal common law, we presume that every provision was intended to accomplish some purpose, and that none are deemed superfluous." (internal quotation marks and citations omitted)).

Third, § 14.01.00 of the CBA requires Kauai Veterans to make Trust Fund contributions for "each hour worked or paid each Employee covered by this Agreement." Interpreting § 02.01.00 such that the CBA covers only employees with specified classifications regardless of the tasks or duties actually performed is not reasonable when considered in conjunction with § 14.01.00. That is, under such an interpretation, Kauai Veterans theoretically could circumvent § 14.01.00's contribution requirement simply by classifying certain employees in uncovered classifications but having them perform the work of a covered classification. *See United States Postal Serv. v. Ester*, 836 F.3d 1189, 1195 (9th Cir. 2016) (recognizing that courts must interpret each provision of a CBA with reference to

the whole and give preference to "reasonable interpretations"); *see, e.g.*, *W. Wash. Painters Defined Contribution Pension Tr. v. W. Industrial, Inc.*, 2012 WL 3704993, at *17 (W.D. Wash. Aug. 27, 2012) (recognizing the absurdity of interpreting a CBA to allow an employer theoretically to classify employees doing covered work in uncovered classifications in order to avoid providing pension benefits).

Fourth, even if the CBA's written terms could be construed as ambiguous, the parties provided conclusive extrinsic evidence corroborating their common understanding that the CBA covers employees who perform the tasks or duties of the specified classifications. For example, Trustees provided the Union's assertions that classifications set forth in Exhibit A "are based on the type of work being done," Costello Decl. ¶ 2, ECF No. 96-1, and that "[t]ruck driving and mechanic *duties* are covered by the [CBA]," Victorino Decl. at 2, ECF No. 88-6 (emphasis added). And Kauai Veterans confirmed that it made Trust Fund contributions for employees it considered to be in a classification not covered by the CBA *when those employees performed the work of a covered classification*. *See* Taniguchi Decl. ¶ 20 ("Whenever the Freight Truck Drivers performed Tractor Trailer work, [Kauai Veterans] made Trust Fund contributions . . . .").

In sum, the court finds as a matter of law that the CBA unambiguously covers all employees who performed the work of a mechanic,

regardless of Kauai Veterans' classification of such employees. *See Am. Fed'n of Musicians of U.S. & Canada*, 903 F.3d at 977 (explaining that where a CBA's written terms are unambiguous, its meaning must be ascertained in accordance with its "plainly expressed intent" (citing *Tacket*, 135 S. Ct. at 933)); *see also Bds. of Trs. of the Nw. Insulation Workers Welfare Tr. v. Thermal Mech. Insulation*, 2016 WL 6561290, at *2-3 (D. Mont. Nov. 4, 2016) (holding that employer was required to make contributions on behalf of employees doing certain type of work set forth in the CBA, even when those employees belonged to a classification specifically excluded under the CBA); *see also Reed v. Insituform Techs., Inc.*, 994 F. Supp. 2d 1022, 1028 (D. Minn. 2014) (finding that even without some critical definitions, the CBAs clearly were intended to cover certain types of work regardless of whether the employee performed such work while employed under a specific job title with respect to fringe benefit contributions).

    b.  *Mechanic duties*

   The CBA does not define the tasks or duties performed by a "mechanic." Trustees provided evidence that mechanics "maintain, repair, or service [Kauai Veterans] trucks." Victorino Decl. at 2. Applying this definition, descriptions on Kauai Veterans' Trucking Tags (time sheets showing the hours and specific work each employee performed each day), Tagaban Decl. ¶ 9, such as "'changed tire of Truck and Trailer', 'work on Truck 22 brake chamber bracket',

'cut slot on 5th wheel lock (handle) . . . [and] help Kimo install new belts on Truck 39' . . . fit the job of a mechanic," *id.* ¶ 14.  And after reviewing Kauai Veterans' records — including Trucking Tags and payroll, tax, and Trust reporting documents, *see id.*  ¶¶ 9-10 — the audit revealed that from January 2014 through June 2017, the following Kauai Veterans employees, who were not classified by Kauai Veterans as mechanics, performed mechanic work:  Kainoa Barino, Lawrence Duque, Kelvin K. Keamoai, Bernard Rita, Jr., and Tyson J. Silva.  *See* Pl.'s CSF ¶¶ 9, 13-14; Tagaban Decl. ¶¶ 14-18; Pl.'s Exs. F (the audit), H,[5] I,[6] J,[7] K,[8] ECF Nos. 88-13, 88-15 to 88-18; Second Tagaban Decl. ¶ 5.[9]

---

[5] Exhibit H is a schedule of under-reported hours showing the names of employees who performed covered work between January 2014 and June 2017, the number of hours each employee worked each month as reported by Kauai Veterans, the number of hours each employee worked each month as determined by audit, the difference between the two calculations, and based on such difference, the amounts of unpaid contributions and liquidated damages owed per year.  Tagaban Decl. ¶ 13.

[6] Exhibit I includes examples of Trucking Tags with descriptions HBAI determined to be mechanic or truck driving duties.  Tagaban Decl. ¶ 9, 11.

[7] Exhibit J includes Kauai Veterans' employee classifications for 2014 and 2015. Tagaban Decl. ¶ 15.  According to Tagaban, Kauai Veterans "did not provide job classifications after 2015, so [he] used classifications from previous years."  *Id.* ¶ 10.

[8] Exhibit K is a chart comparing by year, specific employees' classifications as reported by Kauai Veterans and as determined by audit, as well as the total under-reported hours per year per employee, as determined by audit.  Tagaban Decl. ¶ 18.

[9] Despite slight discrepancies among these documents, Trustees' determinations of the names of specific employees, hours worked, and amounts owed are consistent with the audit report.

Kauai Veterans did not provide evidence disputing Trustees'
definition of mechanic duties or the audit determination that these employees
actually performed mechanic duties.  Rather, Kauai Veterans asserts only that the
employees at issue "worked as . . . Mechanics helper[s]."  Def.'s CSF ¶¶ 7-8, 13;
*see* Taniguchi Decl. ¶¶ 5-6, 11; *but see* Def.'s CSF ¶¶ 15, 17 (classifying Rita and
Silva as freight truck drivers); Ex. J (classifying Barino, Duque, and Silva as shop
helpers).  Kauai Veterans' assertion alone is insufficient to create a genuine issue
of material fact as to either the definition of mechanic duties or that these
employees performed mechanic duties.  Thus, having performed mechanic duties,
these employees are covered under the CBA.  Kauai Veterans is obligated to make
Trust Fund contributions for the hours these employees worked.

### 3.    *Stanley Morinaka, Jr.*

Kauai Veterans contends that the CBA does not cover Stanley
Morinaka, Jr. solely because he is the son of Kauai Veterans' president.  *See* Def.'s
Opp'n at 7; Def.'s CSF ¶ 27; Morinaka Decl. ¶ 6 ("Stanley Morinaka, Jr. is my
son.").  The court disagrees.

As set forth above, the CBA requires Kauai Veterans to make
contributions to the Trust Fund "for each hour worked or paid each Employee
covered by this Agreement."  2011 Agreement, § 14.01.00.  The CBA defines
covered employees as "*all* Employees . . . performing work under the

classifications set forth in Exhibit 'A.'" *Id.* § 02.01.00 (emphasis added).

Although the CBA expressly excludes employees with specific job titles or

classifications, being a member of Stanley Morinaka, Sr.'s family is not among the

excluded classifications. *See id.* Thus, the CBA unambiguously covers any

employee who performs work under the classifications set forth in Exhibit A,

whether or not that employee is a member of Stanley Morinaka, Sr.'s family.

Kauai Veterans improperly relies on *Parisoff Drive-In Market, Inc.*,

201 N.L.R.B. 813 (1973), which addressed a challenge to the inclusion of close

relatives within a bargaining unit for purposes of collective bargaining itself.

*Parisoff Drive-In Market* involved a supermarket owned by several members of the

same family in which three children of one 25%-owner worked. The NLRB

affirmed the exclusion of votes regarding whether to certify a union by the three

children, who worked part-time at the supermarket and lived in the owner's home.

*Id. Parisoff Drive-In Market* did not involve interpretation of a CBA and is

inapplicable to this action involving an ERISA claim for trust fund contributions

pursuant to a CBA. *See Moriarty v. Svec*, 233 F.3d 955, 962 (7th Cir. 2000)

(rejecting LMRA definition of employee in favor of ERISA definition for purposes

of interpreting CBA provision requiring trust fund contributions); *see also IBTL

Local 727 v. O Donnell-Bartz-Schultz Funeral Home*, 1996 WL 41510, at *1-2

(N.D. Ill. Feb. 2, 1996) (having found that owner and his son were covered

employees for purposes of trust contributions, court denied reconsideration of whether owner was a covered employee explaining that "it is the collective bargaining agreements which must be looked to in order to establish who is covered for purposes of contributions and benefits under health and pension trust funds").

Based on the audit of Kauai Veterans' records, Stanley Morinaka, Jr. performed covered truck driver work. *See* Tagaban Decl. ¶¶ 15-17; Second Tagaban Decl. ¶ 9; Exs. F, H, K. Kauai Veterans provided no evidence disputing this determination. Thus, having performed covered work, Stanley Morinaka, Jr. is covered under the CBA. Kauai Veterans is obligated to make Trust Fund contributions for the hours he worked.

## B.     Enforcement of the CBA

The December 1 Order determined that the 2014 Agreement is enforceable by the Trustees, notwithstanding the pending dispute before the NLRB regarding the validity of the CBA after July 1, 2017. *See* ECF No. 78 at 19; *Kauai Veterans*, 2017 WL 5972691, at *7 (agreeing with *Cal. Serv. Emps. Health & Welfare Tr. Fund v. Command Sec. Corp.*, 2012 WL 2838863 (N.D. Cal. July 10, 2012), that based on *MacKillop*, 58 F.3d at 1446, "where there are ongoing disputes as to the CBA's validity, the employer's obligations to the Trust Funds continue unabated until the issue is adjudicated"). And since this court's last

ruling, the ALJ ordered Kauai Veterans to comply with the 2014 Agreement's requirement to report and make contributions to the Trust. *See* April 27, 2018 Decision, Pls.' Ex. A, ECF No. 88-8; https://www.nlrb.gov/case/20-CA-193339. Although Kauai Veterans filed an Exception to the ALJ's decision, there is no ruling yet from the NLRB that the 2014 Agreement lacks force and effect. *See* https://www.nlrb.gov/ case/20-CA-193339 (last visited Mar. 11, 2019). Nor has the 2014 Agreement expired.

The December 1 Order also determined that pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. § 1985(a), this court has jurisdiction to determine whether Kauai Veterans complied with the terms of the CBA. ECF No. 78 at 20-21; *Kauai Veterans*, 2017 WL 5972691, at *7-8. Thus, the court has jurisdiction to determine whether Kauai Veterans complied with §§ 14.01.00 to 14.03.02, requiring Kauai Veterans to report and make the contributions owed under the CBA. That is, this court has jurisdiction to enforce the CBA.

ERISA's Section 515 provides that "[e]very employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement." 29 U.S.C. § 1145. And where a

judgment is obtained in an action to enforce Section 515, ERISA Section 502(g)(2)

authorizes an award of the following amounts:

> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of —
>> (i) interest on the unpaid contributions, or
>> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
>
> (D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
> (E) such other legal or equitable relief as the court deems appropriate.

> For purposes of this paragraph, interest on unpaid contributions shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under section 6621 of Title 26.

29 U.S.C. § 1132(g)(2).

Section 14.03.04 of the CBA, governing delinquent contributions and

collections, similarly provides that "[a]n Employer responsible for . . . delinquent

contributions shall pay to [the] Fund:

> (1) the unpaid contributions,

> (2) interest on the unpaid contributions at the rate of twelve percent (12%) per annum, or the rate prescribed under Section 6621 of the Internal Revenue Code of 1954, whichever is greater . . . .  Interest shall be computed from the first (1st) day following the month for which Trust Fund contributions are owed,

(3) an amount equal to the greater of: (i) interest on the unpaid contributions, or (ii) liquidated damages in the amount of twenty percent (20%) or such delinquent and unpaid contributions due to each respective Fund of twenty dollars ($20.00) whichever is greater, for each and every delinquent monthly contribution.

(4) all audit and collection costs, and

(5) if the delinquency is turned over to an attorney for collection, reasonable attorney's fees and costs of the action as provided for by [ERISA], together with all other reasonable expenses incurred in connection with such suit or claim . . . .

ECF No. 1-1 at 8.

Having determined that freight truck drivers, employees who performed mechanic work regardless of classification, and Stanley Morinaka, Jr., are all covered employees for whom Trust Fund contributions are required, the court must determine whether Trustees met their burden of establishing their claims.

Trustees provided evidence to support their claim that Kauai Veterans under-reported hours worked by specific employees who performed covered work during the period January 2014 through June 2017. This evidence includes the declaration of Noelle Tagaban, HBAI Payroll Auditor, that in performing the audit, he reviewed the following records provided by Kauai Veterans:

- Trucking Tags for the period January 2014 through June 2017;
- Hawaii Withholding Summary of Deposits and Filings from 3rd Quarter 2014 to 2nd Quarter 2017;

- Form 940 for 2014 to 2016;
- Federal Withholding Summary of Deposits and Filings (Form 941) for 3rd Quarter 2014 to 2nd Quarter 2017;
- Hawaii Unemployment Summary of Deposits and Filings 3rd Quarter 2014 to 2nd Quarter 2017;
- W-2 Wage and Tax Statement for 2014 to 2016;
- Payroll Register (Ceridian) covering Pay Date July 15, 2014 through Pay Date June 30, 2017;
- General Excise/Use Tax Return from July 2014 to June 2017;
- Certified Payrolls for the "Lihue Mill Bridge to Rice Street Project" covering Period Ending January 4, 2014 to February 25, 2017;
- Job Classifications from 2014 to 2015; and
- Employer's Report of Contributions from December 2016 to January 2017.

Tagaban Decl. ¶ 9. Tagaban also reviewed declarations of former Kauai Veterans employees Pedryn Baniaga and Ross Kaui, who identified certain co-workers as performing truck driver or mechanic duties during their time of employment, and received assistance and corroboration of his findings from Buddy Victornio, the Union's Business Representative. *Id.* ¶¶ 11, 19; *see also* Victorino Decl. at 2-4.

Trustees also provided undisputed evidence of their calculations regarding delinquent and unpaid contributions, liquidated damages, and interest. *See* Ilacqua Decl. ¶¶ 11-13; Tagaban Decl. ¶ 12; Second Tagaban Decl. ¶ 5; Pl.'s Exs. B to D, F to H.

With the exception of the assertions and arguments addressed elsewhere in this order, Kauai Veterans does not otherwise dispute Trustees'

evidence and calculations.  Thus, the court finds that Trustees are entitled to summary judgment.

## C.    Stay of Enforcement is not Warranted

Kauai Veterans asks the court to stay enforcement of the CBA — that is, to stay any order requiring payment of amounts due to the Trust Funds — pending a ruling on Kauai Veterans' Exception to the April 27, 2018 Decision in the NLRB proceedings, and a possible appeal to the Federal Court of Appeals. Kauai Veterans argues that ordering it to pay now will waste judicial resources and is unfair because it would not likely be able to recoup that money if the NLRB and/or Federal Court of Appeals rules that the CBA terminated on June 30, 2017. *See* Def.'s Opp'n at 2, 9.  The court is not persuaded and declines to stay enforcement of the CBA.

First, there is no dispute that the CBA was valid through June 30, 2017.  Thus, a ruling in the NLRB proceedings is irrelevant to amounts owed to the Trust Funds for work performed during the period January 2014 through June 2017.

Second, as this court previously explained, Kauai Veterans' contribution obligations continue unabated until the NLRB or an appeals court rules that the CBA lacks force and effect.  *See Kauai Veterans*, 2017 WL 5972691, at *6-8 (citing *MacKillop*, 58 F.3d at 1444 ("[A]n employer's assertion that the

CBA is invalid due to lack of majority status is not a defense in an action brought by an ERISA plan or its trustees to collect employer contributions.")).

Third, under similar circumstances, the Ninth Circuit affirmed a district court's refusal to stay a federal action for unpaid employer pension and health plan contributions pending resolution of a separate NLRB proceeding addressing the validity of the applicable CBAs. *See MacKillop*, 58 F.3d at 1446.

And fourth, Kauai Veterans fails to provide any legal authority to support a stay under these circumstances. The cases Kauai Veterans relies on address refunds for contributions made due to employer mistake and are inapplicable to payments made pursuant to court order. *See* Def.'s Opp'n at 9.

## V. <u>CONCLUSION</u>

For the foregoing reasons, Trustees' motion for summary judgment, ECF No. 87, is GRANTED. Kauai Veterans is ordered to submit to Trustees its reports and Trust Fund contributions for the period starting July 1, 2017 until the CBA expires or is legally terminated.

The parties are directed to meet and confer in an attempt to reach an agreement as to: (1) liquidated damages and interest for the late May and June 2017 contributions; (2) unpaid contributions and liquidated damages for the unpaid contributions; (3) interest on the unpaid contributions through the date of this order; (4) audit fees; and (5) if possible, reasonable attorneys' fees and costs. If the

parties reach an agreement, they shall file a stipulation by April 1, 2019. If the

parties are unable to reach an agreement, Trustees shall file by April 8, 2019, a

declaration explaining all interest calculations and supporting reasonable audit

fees. Kauai Veterans shall file a response to Trustees' declaration by April 22,

2019. If the parties are unable to agree on reasonable attorneys' fees and costs,

Trustees may file a separate motion after entry of judgment.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, March 12, 2019.



/s/ J. Michael Seabright
J. Michael Seabright
Chief United States District Judge

*Haw. Annuity Tr. Fund for Operating Eng'rs, v. Kauai Veterans Express Co.*, Civ. No. 16-00615
JMS-RT; Order Granting Plaintiffs Trustees of the Hawaii Annuity Trust Fund for Operating
Engineers' Motion for Summary Judgment, ECF No. 87

32